UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARL WIRKKALA,<br><br>        Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>        Defendant. | CASE NO. C18-5135-MAT<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Carl Wirkkala proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**<u>FACTS AND PROCEDURAL HISTORY</u>**

Plaintiff was born on XXXX, 1974.[1] He completed three years of college and previously worked as a rigger slinger, construction worker I, and lyricist. (AR 22, 156.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff filed an application for DIB in November 2014, alleging disability beginning December 13, 2013. (AR 142.) His date last insured for the purpose of receiving DIB is September 30, 2018. Plaintiff's application was denied initially and on reconsideration.

On September 21, 2016, ALJ Vadim Mozyrsky held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 29-57.) On November 8, 2016, the ALJ issued a decision finding plaintiff not disabled. (AR 13-24.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on January 12, 2018 (AR 1), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's degenerative disc disease of the lumbar spine, generalized anxiety, post-traumatic stress disorder (PTSD), and depression severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has

demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he was further limited to frequent climbing of stairs, ramps, ladders, ropes, or scaffolds; simple, routine, repetitive tasks with occasional contact with coworkers, and superficial interaction with the public; and needed the option to alternate between sitting and standing every thirty minutes. With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a marker merchandise and solderer in production line.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff avers error in relation to evidence submitted to the Appeals Council and in the assessment of evidence from his therapist, lay witness statements, and his testimony. He requests

ORDER
PAGE - 3

remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

Evidence Submitted to Appeals Council

Plaintiff submitted additional medical records, dated between August 23, 2016 and January 17, 2017, to the Appeals Council. (Dkt. 8 at 18-41.) Finding no reasonable probability it would change the outcome of the decision, the Appeals Council indicated it "did not consider and exhibit" the evidence. (AR 2.) Plaintiff asserts error in the failure to include this evidence in the record and asks that it be considered in the Court's review. He alternatively suggests a sentence six remand under 42 U.S.C. § 405(g).

The Commissioner maintains the Appeals Council correctly declined to exhibit the new evidence, but that, as of May 1, 2017, it was properly added to the record with the appeal to this Court. Hearings, Appeals and Litigation Law Manual (HALLEX) I-3-5-20 (C)(2)-(3), *available at* https://www.ssa.gov/OP_Home/hallex/I-03/I-3-5-20.html. She denies any prejudice from the omission given that the evidence is now before the Court. The Commissioner further states that, despite language suggesting otherwise, the Appeals Council considered the new evidence. (*See* AR 2.) The Commissioner agrees with plaintiff the new evidence is properly considered in the Court's substantial evidence review under sentence four of 42 U.S.C. § 405(g). *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162-63 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.")

Plaintiff points to the new evidence as showing he sought continued care for his severe impairments, as well as the ups and downs of his chronic conditions. (*See, e.g.*, Dkt. 8 at 24-25

ORDER
PAGE - 4

(August 23, 2016: reporting increase in low back pain, fatigue, right leg and foot pain, numbness in both feet at times, and "a more difficult time with anxiety, panic, and some agoraphobia as well."), 31 (November 7, 2016: anxiety was improving, but "now it seems to be getting worse."; "Positive for decreased concentration, dysphoric mood and sleep disturbance."), and 39 (January 17, 2017: medication "helping his mood" and "he is in a very good place at this time."; "will have increased pain" if increases level of activity.")) However, as argued by the Commissioner, the mere fact plaintiff continued his medical treatment does not support the conclusion he required any greater work restrictions than found by the ALJ. The new evidence does not identify any functional limitations and reflects six out of six normal examinations. (*Id*. at 26, 29, 32, 37, 40.) It further shows plaintiff continued to improve and was ultimately noted to be stable and requiring no changes to treatment. (*See, e.g., id*. at 28 (October 13, 2016: back pain "under fairly good control[,]" although light assisting at friend's place of employment increases back pain), 35 (November 10, 2016: "doing better than he has in months" due to increase in naturopathic inflammatories, diet, exercise, and weight loss efforts), 40 (January 17, 2017: "He is very stable at this time. We will make no changes.")) Considering the new evidence, in conjunction with the remainder of the record, the Court finds the ALJ's decision to retain the support of substantial evidence.

<u>Other Source Opinion</u>

Plaintiff avers error in the ALJ's consideration of evidence from his mental health therapist, Leslie Orr. The ALJ described the records from Orr as follows:

> The claimant began to receive counseling in March 2016. The July 2016 treatment notes documented a diagnosis of generalized anxiety, PTSD, and depression. The counselor stated that the claimant had a debilitating level of mental capacity and is unable to spend much time around people. The August 19, 2016 counseling

ORDER
PAGE - 5

> notes indicate that the claimant cannot work 40 hours a week. Although the therapist noted such work preclusive limitations, a careful review of the therapy notes fails to reflect that the claimant has had significant mental limitations. The therapist did not document significant objective findings. Such treatment notes show that the claimant has had anxiety, but the therapist did not reflect mental limitations that would affect the claimant's day-to-day functioning. The claimant reported going to church during the April 14, 2016 visit. [Sic] April 21, 2016 visit, he reported writing 40 to 60 songs a year, but it has changed since the "lightning strike". During the May 11, 2016 visit, the claimant reported having fluctuation of anxiety level. The June 2, 2016 treatment notes show that the claimant went camping through the church. During the June 15, 2016 visit, he reported going to Salem with daughter for soccer tournament. The claimant reported during the August 12, 2016 visit that he had good time playing with his band. The July 7, 2016 counseling notes show that the claimant was feeling better.

(AR 20 (citing AR 384-418).) The ALJ found these notes to show plaintiff "had been doing fairly well insofar as his anxiety and social interactions" and to be inconsistent with an opinion of plaintiff's inability to work. (*Id*.) Considering Orr's counseling notes and treatment notes from the primary care physician, the ALJ found plaintiff capable of performing unskilled work with occasional interaction with coworkers and superficial interaction with the public. This conclusion was further supported by clinical findings from examining psychologist Dr. Kathleen Mayers and plaintiff's reports of substantial daily activities. (*Id*. (citing AR 300-04).)

The ALJ assigned little weight to Orr's "vague and conclusory" opinion. (AR 22.) Orr did not specify plaintiff's actual mental limitations, and her opinion of plaintiff's inability to work did not "match with the insignificant mental limitations she indicated in the clinic notes." (*Id*.) Most importantly, Orr's opinions were inconsistent with Dr. Mayer's opinions and plaintiff's substantial daily activities, parental responsibility, and "fairly routine mental health treatment." (*Id*.)

Plaintiff notes that the diagnoses upon which Orr based her opinion mirrored those found

ORDER
PAGE - 6

by the ALJ to be severe and that the ALJ, unlike Orr, is not a medical professional. He asserts that the opinions of medical professionals are always conclusory, and that Dr. Orr properly based her opinion on her treatment notes and testing results falling in the severe range. (*See* AR 387-92, 406-07, 411-12, and 416-17.) He contends Orr did provide information about specific functional impact of his conditions, which the ALJ simply ignored. (*See* AR 385.) He objects to a lack of specificity in the ALJ's finding of inconsistency with treatment notes and describes the notes as documenting his waxing and waning symptoms and as supported by test results. Plaintiff asserts a lack of specificity in the finding of inconsistency with Dr. Mayer's opinions and the consistency with the diagnoses of Dr. Mayer, and avers that Orr's opinion, dated more than a year after the opinion of Dr. Mayer, indicates his condition worsened.

The Commissioner concedes error in the ALJ's finding of inconsistency between the evidence from Orr and plaintiff's "fairly routine mental health treatment." (AR 22.) That is, treatment consisting of counseling and medication is not necessarily conservative or routine. The Commissioner denies any harm resulting from the error given the other reasons provided. The Court agrees any error in this single finding of inconsistency is properly deemed harmless because it is "'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (the court looks to "the record as a whole to determine whether the error alters the outcome of the case.") (quoted and cited sources omitted).

Orr is considered an "other source" under applicable Social Security regulations. 20 C.F.R. §§ 404.1502, 404.1513, and Social Security Ruling (SSR) 06-03p (rescinded effective March 27, 2017).[2] The ALJ may assign less weight to the opinions of other sources than to opinions from

---

[2] New regulations, for claims filed after March 27, 2017 and not applicable here, differentiate between "acceptable medical sources," such as physicians, other licensed health care workers as "medical

ORDER
PAGE - 7

"acceptable medical sources," such as physicians. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, evidence from other sources is considered and may be discounted by providing reasons germane to each source. *Molina*, 674 F.3d at 1111. *Accord Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016).

An ALJ need not accept any opinion, including that of a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. Where a report does not assign any specific limitations or opinions in relation to an ability to work, the ALJ need not provide reasons for rejecting the report. *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Nor is the ALJ required to accept observations that do not show how symptoms or characteristics translate into specific functional deficits precluding work activity. *See, e.g.*, *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (while physician identified characteristics that might at times limit ability to work on a sustained basis ("affective instability, intense anger, daily suicidal thoughts, and chronic feelings of emptiness") he "did not explain how these characteristics precluded work activity").

Orr stated plaintiff "experiences a clinical level of debilitating capacity to function well on a day to day basis[,]" is not able to spend much time around people, and could not work forty hours a week given his back pain and anxiety. (AR 385, 395.) Orr's diagnoses, conclusory and vague assertions, and reflection of plaintiff's symptom reporting do not set forth specific, functional limitations.[3] The ALJ reasonably discounted Orr's opinion as vague, conclusory, and lacking in

---

sources," and "nonmedical sources." 20 C.F.R. § 404.1502(a), (d), (e). The new regulations also recognize as a "medical opinion" a statement from a "medical source." § 404.1513(a)(2). *Cf.* § 404.1527(a)(1) (defining, for claims filed before March 27, 2017, a medical opinion as an opinion from an "acceptable medical source").

[3] The Commissioner also observes that Orr went beyond the scope of her practice and commented on plaintiff's physical functioning and that, in any event, the ALJ accounted for the statements regarding

ORDER
PAGE - 8

specificity as to mental limitations.

An ALJ may consider the inconsistency of an opinion with the medical record, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), discrepancy or contradiction between an opinion and a medical provider's own notes or observations, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), and inconsistencies within and between reports of physicians or other medical providers, *Morgan*, 169 F.3d at 603. An ALJ may also consider inconsistency between an opinion and a claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

The ALJ here reasonably rejected Orr's statements as inconsistent with her own treatment notes, the opinions of Dr. Mayer, and the evidence of plaintiff's activities and parental responsibility. He was sufficiently specific, identifying numerous examples of plaintiff's activities addressed in Orr's treatment notes and reflecting inconsistency with work preclusive limitations based on anxiety, difficulty being around others, or other debilitating symptoms. (AR 20.) The ALJ also properly favored the contradictory opinions of examining physician Dr. Mayer. Dr. Mayer found plaintiff capable of understanding, remembering, and carrying out three-stage instructions and detailed tasks, able to interact with others in a work setting, with average memory, fund of information, abstract thinking, judgment, insight, and concentration for tasks performed, able to maintain attention and concentration through a normal, eight-hour workday, and likely able to tolerate changes in a competitive work setting. (AR 304.) While plaintiff construes the evidence from Orr as reflecting worsening, the ALJ's decision reflects his consideration of the fact plaintiff had not been receiving treatment or taking medication at the time Dr. Mayer found him as capable

---

plaintiff's back by including a sit/stand option in the RFC. Because the ALJ did not provide this reasoning, it constitutes a post hoc rationalization and cannot be relied upon as a basis for affirming the ALJ's decision. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

ORDER
PAGE - 9

as described above. The ALJ also accounted for greater limitations in functioning than opined by Dr. Mayer by limiting plaintiff to simple, routine, repetitive tasks, with occasional coworker contact and superficial contact with the public. Finally, as described below, the ALJ provided a detailed discussion of activities and parental responsibilities inconsistent with the evidence from Orr. These and the other germane reasons for assigning little weight to Orr's opinions have the support of substantial evidence.

### Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[4] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ here found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical evidence and other evidence of record. Plaintiff reads the ALJ's decision as providing only two reasons in support of that conclusion, namely, inconsistent daily activities and the receipt of only routine, conservative

---

[4] Effective March 28, 2016, the Social Security Administration eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 10

treatment. The Commissioner again concedes the ALJ's perception of conservative and routine treatment may not be legally sufficient. *See, e.g, Garrison v. Colvin*, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment.") The Commissioner argues the remaining reasons serve to support the ALJ's conclusion regarding plaintiff's symptom testimony. The Court agrees any reliance on the perception of conservative and routine treatment is properly deemed harmless, and that the ALJ provided specific, clear, and convincing reasons for not accepting plaintiff's testimony as to the degree of his limitations. *See Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, an error in the assessment may be deemed harmless; the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error.")[5]

A.  <u>Absence of Substantiating Medical Opinions and Records</u>

The ALJ found the medical record did not substantiate plaintiff's symptoms to the degree alleged. (AR 18.) The alleged limitations in sitting, standing, walking and lifting were not corroborated by a competent medical source, and the frequency and severity of panic attacks plaintiff described were not substantiated by the therapist, primary care physician, or other treatment providers. The treatment notes did not document and plaintiff's substantial social interactions did not match with the alleged frequent and severe panic attacks. (*Id*.) The ALJ, in

---

[5] It is not clear why plaintiff omits consideration of all of the reasons identified by the ALJ. The ALJ's decision follows a typical and appropriate formula, consisting of a description of plaintiff's testimony, followed by the required two-step analysis described in *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007), and, thereafter, the reasons for not accepting the claimant's testimony.

sum, reasonably discounted plaintiff's symptom testimony based on an absence of supportive medical opinion and other evidence. *See, e.g.*, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (ALJ properly considered the absence of support by "either the objective medical evidence or any persuasive reports of his doctors"); *Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.")

B. <u>Contradictory and Inconsistent Medical Evidence</u>

An ALJ may reject a claimant's symptom testimony where it is contradicted by or inconsistent with the medical evidence. *Carmickle*, 533 F.3d at 1161, and *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ here described numerous medical records contradicting or inconsistent with plaintiff's symptom testimony. With respect to plaintiff's back, the ALJ pointed to specific inconsistent findings on examinations, such as full range of motion in lumbar spine, negative straight leg raising, and superficial Waddell signs in April 2014; normal musculoskeletal examination and normal motor strength, reflexes in upper and lower extremities, gait, and station in February 2014; full motor strength and normal gait in May 2015; and, in April 2016, no notable findings on neurological and physical examination, no motor deficits, full strength in lower extremities, and ability to squat and toe and heel walk without difficulty. (AR 18 (citations to record omitted).) Considering the "benign objective findings," the ALJ restricted plaintiff to light work, with a sit/stand option in light of his subjective complaints. (AR 19.) Considering fatigue, the ALJ noted an absence of related testing, evaluation, diagnosis, or treatment notes consistently documenting effects of medication that would cause the symptom. He found nothing in the record to support the presence of severe fatigue, but restricted plaintiff to

ORDER
PAGE - 12

light duty in consideration of his subjective complaints. The ALJ also considered the fairly normal mental status examination by Dr. Mayers and found Orr's treatment records did not document significant objective findings or reflect mental limitations that would affect day-to-day functioning, and generally showed plaintiff had been doing fairly well. (AR 20.) The ALJ nonetheless accounted for some limitations by restricting plaintiff to unskilled work with occasional interaction with coworkers and superficial interaction with the public. The ALJ also properly relied on contradictory and inconsistent evidence in discounting plaintiff's testimony.

C.  Evidence of Improvement

Plaintiff reported significant improvement after a few weeks of physical therapy, indicating in June 2016 he felt the best he had in two years and wanted to hold off on surgical intervention "because he is well enough not to seek more aggressive medical care relating to his back impairment." (AR 18-19 (citations to record omitted).) Records reflected improvement in August 2015 following treatment with psychotropic medications, included a May 2016 observation another medication had been helpful, and the counseling notes from Orr showed plaintiff had been doing fairly well in so far as his anxiety and social interactions. (AR 19-20.) The ALJ properly considered this evidence of improvement. *Morgan*, 169 F.3d at 599-600.

D.  Inconsistency with Activities

An ALJ may consider inconsistencies or contradictions between a claimant's statements and activities of daily living. *Thomas*, 278 F.3d at 958-59. *See also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills[.]") The ALJ here concluded plaintiff's activities exceeded his testimony of severe anxiety, triggered by being around people he is not familiar with, isolating behavior, and anxiety attacks, and physical limitations such as

ORDER
PAGE - 13

fatigue for at least three hours in the middle of the day, walking and standing for about thirty minutes, and sitting for a bit longer than thirty minutes. (AR 17, 20-21.)

Plaintiff maintains the ALJ cherry picked the record and failed to properly consider evidence in context. The Court disagrees. The ALJ contrasted plaintiff's severe anxiety when around unfamiliar people with the fact he enjoys the outdoors, goes to soccer practice with his daughter, goes shopping with his wife, is active in and regularly attends his church, coaches basketball, and plays music with his band. (AR 20.) He noted plaintiff had a valid driver's license and drives a car, and testified to daily activities including cleaning the kitchen, making food, watching the news, shopping for groceries when feeling stronger, running errands, taking his daughter to soccer practice, and performing core-strengthening exercises. (AR 21.) Plaintiff also enjoys doing woodwork, making wooden crosses, small shelves, and other gifts, and uses tools such as a sander, table saw, and chopping saw. He coached basketball in 2014 and co-coached in 2015. In May 2015, plaintiff described his daily routine as including going to the store to pick up newspapers, checking his wife's car and oil, cleaning the house at least four times a week, feeding his baby, changing diapers, taking a short walk, lying/sleeping for thirty minutes, home schooling his son, vacuuming, sweeping, doing dishes, preparing meals for his family, checking mail, running errands, picking up and doing homework with his daughter, watching television, and having family time with his children. In 2014, he reported doing light stretching, bringing his daughter to school and picking her up, assisting his son with home schooling, reading, doing dishes, going for a walk, taking care of his thirteen- and three-year-old sons, preparing meals, attending to personal care, doing laundry, mowing, shopping, handling finances, going out alone, and spending time with others. The ALJ reasonably found the above-described activities to be indicative of the ability to perform light unskilled work, and of good physical and mental abilities

ORDER
PAGE - 14

discrediting plaintiff's allegation of total disability.

## Lay testimony

Lay witness testimony as to symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). *But see Molina*, 674 F.3d at 1115-22 (failure to address lay testimony may be harmless). The ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

The ALJ here assigned little weight to lay statements from a family friend, Elaine Kandoll, and plaintiff's wife, Donna Wirkkala. (AR 22 (citing AR 223-24).) As argued by plaintiff and conceded by the Commissioner, the ALJ did not properly reject the testimony of these lay witnesses based on their relationship with plaintiff and their status as non-medical sources. *Diedrich v. Berryhill*, 874 F.3d 634, 640-41 (9th Cir. 2017) (neither personal relationship with claimant, nor lack of support from "'overall medical evidence'" were germane reasons for discounting lay testimony; "[R]egardless of whether they are interested parties, friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to his or her condition."; "The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing."). However, because the ALJ provided other germane reasons for rejecting the lay testimony, these errors were harmless. *See Molina*, 674 F.3d at 1115, and *Carmickle*, 533 F.3d at 1162-63.

The ALJ described Elaine Kandoll and Donna Wirkkala as testifying plaintiff could not perform even simple tasks, did not have many friends, had fatigue and back pain, cannot be around other people, is forgetful, and cannot even attend to his personal care. (AR 22 (citing AR 223-

ORDER
PAGE - 15

24).) The ALJ properly assigned limited weight to these statements because they were inconsistent with plaintiff's substantial daily activities and parental responsibility. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (germane reasons for discounting lay testimony include inconsistency with evidence of claimant's activities and claimant's reports). The ALJ also properly discounted the lay testimony based on inconsistency with the objective findings in the treatment records and the preponderance of the opinions and observations of the medical doctors in this case. *Id*. at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."); *accord Bayliss*, 427 F.3d at 1218 (inconsistency with the medical evidence is a germane reason for rejecting lay testimony). As reflected in the ALJ's decision, all of the physician opinions in the record supported the conclusion plaintiff could perform some degree of work and the objective medical evidence supported the conclusion plaintiff could perform work at the RFC assessed. (AR 17-22 (in addition to Dr. Mayer, State medical consultants assessed plaintiff as capable of light or sedentary work and having no severe mental impairments).)

The record also contains a lay statement from plaintiff's aunt, Linda Wirkkala. (AR 222.) The ALJ did not cite to or mention this statement and plaintiff waived an assignment of error by failing to raise the issue. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (the court cannot manufacture arguments for a party and only considers claims argued specifically and distinctly in the opening brief; the bare assertion of an issue does not preserve a claim). The ALJ's failure to address this lay statement does not, in any event, warrant remand. "Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the failure to address the lay testimony may be deemed harmless. *Molina*, 674 F.3d at 1117-22. Also, when providing germane reasons for rejecting the

testimony of one witness, the ALJ need only point to the same reasons upon rejecting similar testimony from a different witness. *Id.* Linda Wirkkala states that plaintiff's pain limits how active he can be on a daily basis, that he rests on the couch with an ice pack, "at times" does not want to be around people as much as previously due to his depression and anxiety, and he has not been able to write songs and compose music as he used to do routinely. (AR 222.) Because this testimony is similar to and does not identify any greater limitations than that attested to by plaintiff (*see* AR 35-52), and because the ALJ's well-supported reasons for discounting plaintiff's testimony apply equally well to this lay testimony, the ALJ's failure to address the lay statement from Linda Wirkkala does not constitute harmful error.[6]

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>6th</u> day of September, 2018.

                                                   *[signature]*
Mary Alice Theiler
United States Magistrate Judge

---

[6] Plaintiff also asserts the RFC is flawed based on the various specific assignments of error identified. Having found no harmful errors, this mere restatement of argument does not establish error at step four or beyond. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

ORDER
PAGE - 17